## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EVANSTON INSURANCE COMPANY,   CASE NO.: _____

   Plaintiff,

v.

1841 MONROE STREET LLC,
DISTRICT HOME BUZZ, LLC,
UNIVERSAL UNLIMITED LLC,
ATIENO OKELO, ROBERT L. WILLIAMS,
FREDERICK C. HAGGARD, and
CHRISTINE L. HAGGARD

   Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, EVANSTON INSURANCE COMPANY ("EVANSTON"), by and through its undersigned counsel, hereby files this Complaint for Declaratory Judgment against the Defendants, 1841 MONROE STREET LLC ("1841 MONROE"), DISTRICT HOME BUZZ, LLC ("DC HOME BUZZ"), UNIVERSAL UNLIMITED LLC ("UNIVERSAL"), ATIENO OKELO ("OKELO"), ROBERT L. WILLIAMS ("WILLIAMS"), and FREDERICK C. HAGGARD ("F. HAGGARD") and CHRISTINE L. HAGGARD ("C. HAGGARD") (together, the "HAGGARDS"), and states as follows:

## INTRODUCTION

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 for the purpose of resolving an actual controversy between and among EVANSTON and 1841 MONROE, arising out of insurance policies issued by EVANSTON to 1841 MONROE. In this action, EVANSTON seeks a declaration that it has no obligation to defend or indemnify 1841

MONROE in connection with an underlying lawsuit filed by the HAGGARDS arising out of the renovation of a house owned by 1841 MONROE.

## THE PARTIES

2.      Plaintiff EVANSTON INSURANCE COMPANY is an Illinois corporation with its principal place of business in Illinois, and is a citizen of Illinois.

3.      Defendant 1841 MONROE STREET LLC is a limited liability company organized and existing under the laws of the District of Columbia and is comprised of sole member Robert L. Williams, who is a citizen of Washington, District of Columbia.

4.      Defendant DISTRICT HOME BUZZ, LLC is a limited liability company organized and existing under the laws of the District of Columbia and is comprised of sole member Atieno Okelo, who is a citizen of Washington, District of Columbia.

5.      Defendant UNIVERSAL UNLIMITED LLC is a limited liability company organized and existing under the laws of the District of Columbia.  Upon information and belief, UNIVERSAL UNLIMITED LLC is not a citizen of the Plaintiff's state of citizenship, Illinois.

6.      Defendant ATIENO OKELO has established her domicile in Washington, District of Columbia and is a citizen of Washington, District of Columbia.

7.      Defendant ROBERT L. WILLIAMS has established his domicile in Washington, District of Columbia, and is a citizen of Washington, District of Columbia.

8.      Defendant FREDERICK C. HAGGARD has established his domicile in Washington, District of Columbia, and is a citizen of Washington, District of Columbia.

9.      Defendant CHRISTINE L. HAGGARD has established her domicile in Washington, District of Columbia, and is a citizen of Washington, District of Columbia.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332.   Complete diversity exists between EVANSTON on the one hand and all of the Defendants on the other hand.   The amount in controversy exceeds $75,000.00 exclusive of interest and costs, because the HAGGARDS have demanded no less than $481,853.00 from 1841 MONROE in the underlying lawsuit at issue in this action.

11.     This Court has personal jurisdiction over 1841 MONROE, DC HOME BUZZ, and UNIVERSAL because they were formed in the District of Columbia and it is where they have their principal place of business.

12.     This Court has personal jurisdiction over OKELO, WILLIAMS, and the HAGGARDS because, upon information and belief, they all reside in Washington, District of Columbia and are citizens of the District of Columbia.

13.     Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391 because a substantial part of the events and transactions giving rise to this action occurred in this district and because the Defendants are subject to personal jurisdiction within the district.

14.     This action is properly filed pursuant to 28 U.S.C. § 2201 because an actual controversy of a ripe and justiciable nature exists among EVANSTON and 1841 MONROE involving the scope and extent of EVANSTON's duty to defend and indemnify 1841 MONROE for the claims being asserted by the HAGGARDS against 1841 MONROE.

## UNDERLYING LAWSUIT

15.     The HAGGARDS filed suit in the Superior Court of the District of Columbia, on November 22, 2017, in an action captioned *Frederick C. Haggard and Christine L. Haggard,*

*Plaintiffs v. 1841 Monroe Street, LLC, District Home Buzz, LLC, Universal Unlimited, LLC, Atieno Okelo, and Robert L. Williams, Defendants*, Case No. 2017-CA-007872 B (the "Underlying Lawsuit").  A true and correct copy of the Complaint in the Underlying Lawsuit is attached hereto as **Exhibit "A"**.

16.     The Underlying Lawsuit alleges that the HAGGARDS own a single-family row house located at 1839 Monroe Street, NW in Washington, District of Columbia.  *Complaint*, ¶3.

17.     The Underlying Lawsuit alleges that 1841 MONROE, an entity owned and operated by WILLIAMS and OKELO, purchased the property located at 1841 Monroe Street, NW on July 18, 2016, for the purpose of renovating and converting it from a circa-1908 single-family row house into a multi-unit condominium building in order to then sell the condominium units to the general public (the "Project").  *Complaint*, ¶¶4–6, 12–13.

18.     The Underlying Lawsuit alleges that DC BUZZ HOME, a real estate firm, ordered third-party inspections of the Project and was the listed owner of 1841 Monroe Street, NW on one (1) or more permit applications.  *Complaint,* ¶8.

19.     The Underlying Lawsuit alleges that UNIVERSAL served as the general contractor for the Project.  *Complaint,* ¶9.

20.     The Underlying Lawsuit seeks to hold 1841 MONROE, WILLIAMS, OKELO, DC BUZZ HOME and UNIVERSAL (the "Underlying Defendants") jointly and severally liable for personal injury to the HAGGARDS and damages to the HAGGARDS' residence and personal property that occurred during the Underlying Defendants' work on the Project. *Complaint,* ¶¶18, 31–32, 65–70.

21.     The Underlying Lawsuit alleges that, in March, 2017, the Underlying Defendants' unpermitted demolition work to the chimney for 1841 Monroe St, NW caused damage to the HAGGARDS' chimney, flue and associated elements. *Complaint,* ¶¶18, 31–32.

22.     The Underlying Lawsuit alleges that the HAGGARDS' home was contaminated with asbestos and other toxins such as lead based paint during incidents on March 13, 2017 and March 16, 2017 where said toxins were "shot into" the HAGGARDS' home "at high velocity" as a result of the Underlying Defendants' construction practices, which were in violation of federal and District of Columbia statutes and OSHA regulations.  *Complaint,* ¶18.

23.     The Underlying Lawsuit alleges that the HAGGARDS' home was contaminated with carbon monoxide as a result of workers on the Project's regular use of a generator indoors without proper ventilation, resulting in an incident on March 21, 2017 where carbon monoxide flowed through the holes in the party wall between the HAGGARDS' home and 1841 Monroe St, NW and reached dangerous levels in the HAGGARDS' home. *Complaint,* ¶¶18, 33.

24.     The Underlying Lawsuit alleges that, as observed in a May 10, 2017 engineering report conducting a peer review of the Project, one or more of the Underlying Defendants and/or persons working on their behalf repeatedly punctured the party wall between 1841 Monroe St, NW and the HAGGARDS' home, compromising the party wall and resulting in impairment to the fire and sound protection of the party wall between the structures.  *Complaint,* ¶¶18, 27–28.

25.     The Underlying Lawsuit alleges that, on May 31, 2017, workers at the Project punched all the way through the party wall between 1841 Monroe St, NW and the HAGGARDS' home, resulting in at least one (1) hole in the party wall measuring approximately four (4) inches by eight (8) inches wide. *Complaint,* ¶¶18, 29.

26.     The Underlying Lawsuit alleges that the May 31, 2017 incident involving the large puncture of the party wall unleashed an abundance of dust and debris, including asbestos dust, into the HAGGARDS' home. *Complaint, ¶¶18, 33.*

27.     The Underlying Lawsuit alleges that, on June 3, 2017 and June 4, 2017, unpermitted renovation and demolition work on the Project by the Underlying Defendants, which involved digging into the home's basement to perform unsupported work on old footings, caused significant cracks to form at the party wall front junction and around window openings on the HAGGARDS' home's walls. *Complaint, ¶¶18, 35.*

28.     The Underlying Lawsuit alleges that the Underlying Defendants have conducted excavation work on the Project without any approved shoring and sheeting plans and, in place of underpinning the foundation, have raised the first floor, resulting in significant damage to the party wall. *Complaint, ¶18, 36.*

29.     The Underlying Lawsuit alleges that, during construction on the Project, bricks have fallen on the HAGGARDS' side of the party wall and that the damage has not been repaired or replaced. *Complaint, ¶18.*

30.     The Underlying Lawsuit asserts five (5) causes of action against all of the Underlying Defendants, including 1841 MONROE, for the alleged problems visited upon the HAGGARDS during Project construction: negligence, trespass to realty, private nuisance, negligent hiring and retention, and negligent supervision. *See Complaint, Counts I–V.*

31.     The Underlying Lawsuit seeks compensatory damages in the following amounts:

1. $366,300.67 for the cost of repairing the party wall, restoring its structural integrity, its previous level of fire protection and noise resistance, and relief for any permanent loss of value.

2. $61,475.00 for professional fees for engineering, environmental and other testing necessary to diagnose dangers to the HAGGARDS' health and property.

3. $62,000.00 in lost wages and lost vacation time.

4. $41,578.00 for estimated costs of decontaminating the HAGGARDS' home of asbestos, replacing the personal items ruined by the actions of the Underlying Defendants, relocating the HAGGARDS and their tenant during the decontamination process, and dog sitting while the parties are forced to leave their home.

*Complaint,* ¶¶60, 62.[1]

32.     The Underlying Lawsuit demands that judgment be entered jointly and severally against the Underlying Defendants based upon allegations that the Underlying Defendants participated in a civil conspiracy in which they acted illegally and entered into a collective plan to renovate the 1841 Monroe St, NW property as inexpensively and quickly as they could get away with, with a complete indifference to the adherence to laws or any reasonable standard of care towards the health of the HAGGARDS or their real and personal property.  *Complaint,* ¶¶65–68.

33.     The Underlying Lawsuit further demands that all construction be removed from the HAGGARDS' side of the party wall, and that any further construction occur without puncturing the party wall, as well as attorney's fees, court costs and such other relief as the Court deems proper.  *Complaint,* ¶71.

---

[1] The specific amounts listed by the HAGGARDS in the "Relief Requested" section of their Complaint (enumerated *supra* in Paragraph 31) total $531,353.67, which differs from the $481,853.00 amount repeated in each "Wherefore" clause of all five (5) causes of action against the Underlying Defendants.  The reason for the discrepancy in the calculation is not clear from the Complaint in the Underlying Lawsuit.

34.     EVANSTON is defending 1841 MONROE in the Underlying Lawsuit pursuant to a full reservation of rights issued on January 3, 2018.  A true and correct copy of the reservation of rights letter is attached hereto as **Exhibit "B"**.

## THE EVANSTON POLICIES

35.     EVANSTON issued Policy Number 3EF0361 to 1841 MONROE in Washington, District of Columbia, which was in effect for the annual period between July 7, 2016 and July 7, 2017 (the "2016 Policy").   The 2016 Policy has limits of $1,000,000.00 each occurrence/ $2,000,000.00 general aggregate/ $1,000,000.00 products–completed operations aggregate.   A true and correct copy of the 2016 Policy is attached as **Exhibit "C"**.

36.     EVANSTON issued Policy Number 3EM4610 to 1841 MONROE in Washington, District of Columbia, which was in effect for the annual period between July 8, 2017 and July 8, 2018 (the "2017 Policy").   The 2017 Policy has limits of $1,000,000.00 each occurrence/ $2,000,000.00 general aggregate/ $1,000,000.00 products–completed operations aggregate.   A true and correct copy of the 2017 Policy is attached as **Exhibit "D"**.

37.     The 2016 Policy and the 2017 Policy (collectively, the "Evanston Policies") provide that EVANSTON becomes legally obligated to pay damages that the "insured" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the Evanston Policies apply:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is an Insured.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

      **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

        **(1)**      The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        **(2)**      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

      **b.**      This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**      The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**      Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*  *  *

38.      The Evanston Policies define "occurrence" as follows:

      **13.**      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

39.      The Evanston Polices define "property damage" and "suit" as follows:

17.     "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it, or

    b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:

    a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

* * *

40.     The Evanston Policies' coverage for "bodily injury" and "property damage" is subject to the following exclusions:

**2.      Exclusions.**

This insurance does not apply to:

**a.      Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

**j.      Damage to Property**

"Property damage" to

**(1)**      Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)**      Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**      Property loaned to you;

**(4)**      Personal property in the care, custody or control of the insured;

**(5)**      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\*\*\*

**k.**      **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**      **Damage to Your Work**[2]

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

~~This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.~~

**m.**      **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work", or

---

[2]As amended by the Exclusion – Damage to Work Performed by Subcontractors on Your Behalf endorsement in the Evanston Policies.

**(2)**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**     **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**     "Your product";

**(2)**     "Your work"; or

**(3)**     "Impaired property";

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

41.     The Evanston Policies further provide:

**SECTION II – WHO IS AN INSURED**

**1.**     If you are designated in the Declarations as:

\* \* \*
**c.**     A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insured, but only with respect to their duties as your managers.

\* \* \*
No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

\* \* \*

42.     The Evanston Policies contain the following General Liability Conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \*
**4.**     **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.**    **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.**    **Excess Insurance**

**(1)**    This insurance is excess over:

\* \* \*

**(b)**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)**    When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)**    When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)**    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)**    The total of all deductible and self-insured amounts under all other insurance.

**(4)**    We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.**    **Method of Sharing**

If all of the other permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

\* \* \*

13

43.     The Evanston Policies provide definitions of "pollutants," "products-completed operations hazards," and "your work" as follows:

15.     "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.     "Products-completed operations hazard":

a.     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.

(b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

* * *

22.     "Your work":

a.     Means:

(1)     Work or operations performed by you or on your behalf; and

(2)     Materials, parts or equipment furnished in connection with such work or operations.

b.     Includes:

14

   **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)**  The providing of or failure to provide warnings or instructions.

* * *

44.  The Evanston Policies also contain the following relevant endorsements:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.**  **Pollution**

   **(1)**  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

   **(2)**  Any loss, cost or expense arising out of any:

     **(a)**  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

     **(b)**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

* * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMBINATION GENERAL ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**  Paragraph **2.** Exclusions of Section **I** - Coverage **A** – Bodily Injury And Property Damage Liability and Coverage B – Personal And Advertising Injury Liability are revised as follows:

   **1.**  The following Exclusion:

15

    **a.**      Is added to Coverage **A**; and

    **b.**      Replaces the Breach Of Contract exclusion in Coverage **B**:

This insurance does not apply to:

**Breach Of Contract**

Claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied-in-fact contract.

**2.**      The following Exclusions are added:

This insurance does not apply to:

**Cross Suits**

"Bodily injury", "property damage", "personal and advertising injury" or any injury, loss, or damage, including consequential injury, loss or damage, arising out of, caused or contributed to by any Named Insured covered by this policy initiating causes of action or allegations against any other Named Insured covered by this policy.

\* \* \*

**Fines, Penalties And Punitive Or Exemplary Damages**
Fines, penalties, and punitive or exemplary damages, or any expenses or any obligation to share such damages or repay another. However, this exclusion does not apply to punitive damages from wrongful death brought under Alabama's Wrongful Death Statute.

**Hazardous Or Toxic Materials**

"Bodily injury", "property damage", "personal and advertising injury" or any injury, loss, or damage, including consequential injury, loss or damage, arising out of, caused or contributed to by "hazardous or toxic materials":

(1)      Whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from "hazardous or toxic materials". This applies regardless of source, including but not limited to, from any goods, products or structures containing "hazardous or toxic materials", or the existence of "hazardous or toxic materials" in any form, in occupancy, construction, manufacture, sale, transportation, handling, storage, disposal, distribution or removal; and

(2)      Regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to, abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of "hazardous or toxic materials", or in any way respond to assess the effects of "hazardous or toxic materials".

Coverage does not apply to any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way, responding to, or assessing the effects of "hazardous or toxic materials" by any insured or by any other person or entity.

16

* * *

**Movement Of Land Or Earth**

"Bodily injury", "property damage", "personal and advertising injury" or any injury, loss, or damage, including consequential injury, loss or damage, arising out of, caused or contributed to by movement of land or earth regardless of whether it emanates from, is aggravated by, or is attributable to any operations performed by or on behalf of any insured whether the first manifestation occurs during the policy period or prior or subsequent thereto. Movement of land or earth includes instability, subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, rising, tilting, bulging, cracking, mud flow, mudslide, earthquake, shrinking or expansion of ground, slabs, footings, foundations, walls, roofs, floors, ceilings or any other real property or part thereof.

**Professional Liability**

Professional liability, errors, omissions, negligent acts, malpractice or acts of any type including rendering or failure to render any type of professional service, unless such coverage is specifically endorsed onto the policy.

* * *

**D.**     Section **V** – Definitions is amended to add the following:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by "fungi". However, this exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for bodily consumption.

"Hazardous or toxic materials" means asbestos, lead, silica dust, toxic dust, "fungi", bacteria, organic pathogens, bio-organic growth or systemic chemical poison.

All other terms and conditions remain unchanged.

* * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – CONTINUOUS OR PROGRESSIVE INJURY OR DAMAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2.** Exclusions under Section **I** – Coverages, Coverage **A** – Bodily Injury And Property Damage Liability and Coverage **B** – Personal And Advertising Injury Liability:

This insurance does not apply to:

**Continuous Or Progressive Injury Or Damage**

"Bodily injury", "property damage" or "personal and advertising injury" which:

**(1)**     First occurred, first began to occur, or is alleged to have first occurred;

**(2)**     Is alleged to be in the process of occurring to any degree; or

**(3)**     Is caused by or alleged to have been caused by incremental, continuous or progressive injury or damage arising from an "occurrence" or offense which first occurred, began to occur, or is alleged to have first occurred, prior to the effective date of this policy.

All other terms and conditions remain unchanged.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LIMITATION – CONTRACTOR OR SUBCONTRACTOR MANAGEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**A.**     The following is added to Section **IV** – Commercial General Liability Conditions:

**Contractor Or Subcontractor Management**

Prior to the commencement of any work performed for or on behalf of the insured by a contractor or subcontractor, the insured must require, secure and maintain a certificate of insurance that confirms that the contractor or subcontractor:

**a.**     Carries Commercial General Liability coverage with limits that are equal to or greater than the limits shown in the Schedule above; and

**b.**     Names you as an additional insured on such coverage.

If no limits are shown in the Schedule above, then the limits carried by the contractor or subcontractor must be equal to or greater than the limits shown in the Declarations of this Coverage Form.

**B.**     If all of the conditions of the Contractor Or Subcontractor Management condition are not met or the insured fails to provide proof of compliance with such conditions at the time of an "occurrence", the following is added to Section  **III** – Limits Of Insurance and will apply to such "occurrence":

Subject to Paragraph **2.** of Section **III** – Limits Of Insurance, $50,000 is the most we will pay for the sum of all:

**a.**     Damages under Coverage A;

**b.**     Damages under Coverage B;

**c.**     Medical Expenses under Coverage C;

**d.**     Loss adjustment expenses;

**e.**     Supplementary payments; and

**f.**     Defenses costs;

because of all "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence" when the insured fails to meet or provide proof of compliance with the Contractor Or Subcontractor Management condition.

Once this limit is exhausted, we are no longer obligated to defend or indemnify the insured for such "occurrence".

All other terms and conditions remain unchanged.

* * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LIMITED EXCLUSION – SPECIFIED UNDERGROUND HAZARDS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **2.** Exclusions of Section **I** – Coverages, Coverage **A** – Bodily Injury And Property Damage Liability and Coverage **B** – Personal And Advertising Injury Liability:

The insurance does not apply to:

**Specified Underground Hazards**

"Bodily injury", "property damage" or "personal and advertising injury" in any way involving "your work" below the surface of the ground.

However, this exclusion does not apply if, prior to commencing work:

**(1)**    You have either:
    **(a)**    Contracted the appropriate local underground locating service; or
    **(b)**    Verified a local underground locating contact has been made by another with that responsibility; and
**(2)**    The local underground locating service has responded and, prior to commencement of "your work", marked all underground property, including, but not limited to, all underground lines, pipes, cables, or utilities.

All other terms and conditions remain unchanged.

* * *

## <u>REQUEST FOR DECLARATORY JUDGMENT</u>

45.     EVANSTON reincorporates by reference the allegations set forth in Paragraphs 1 through 44 above.

46.     This is an action for declaratory judgment regarding the claims asserted in the Underlying Lawsuit against 1841 MONROE.

47.     Under the terms and conditions of the Evanston Policies, EVANSTON has neither a duty to defend nor a duty to indemnify 1841 MONROE against the claims of the HAGGARDS.

48.     There is a bona fide, actual and present controversy between EVANSTON and 1841 MONROE regarding EVANSTON's rights and obligations under the Evanston Policies with respect to the claims asserted against 1841 MONROE in the Underlying Lawsuit.

49.     This Court's declaration will confer certainty on the parties with respect to their rights, duties and obligations under the Evanston Policies.  The Court's declaration will serve the interest of justice.

50.     EVANSTON has no adequate remedy at law.

## COUNT I

### DECLARATORY JUDGMENT THAT THE EVANSTON POLICIES DO NOT PROVIDE COVERAGE BECAUSE THE UNDERLYING LAWSUIT DOES NOT ALLEGE AN "OCCURRENCE" UNDER THE EVANSTON POLICIES

51.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

52.     The insuring agreements in the Evanston Policies provide coverage only if "property damage" is caused by an "occurrence."

53.     The Evanston Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

54.     The Underlying Lawsuit alleges that the Underlying Defendants, including 1841 MONROE, acted illegally and conspiratorially; thus, the alleged damages sought in the Underlying Lawsuit did not result from an "accident" or an "occurrence" or were otherwise expected or intended.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that EVANSTON is not obligated to defend and/or indemnify 1841 MONROE for damages sought in the Underlying Lawsuit because the alleged damages do not fall within the insuring agreement of the Evanston Policies because there was no "occurrence" as defined under the Evanston Policies.

## COUNT II

### DECLARATORY JUDGMENT THAT THE EVANSTON POLICIES EXCLUDE COVERAGE FOR FUTURE INJURIES

55.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

56.     The Evanston Policies only apply to "bodily injury" and/or "property damage" that occurs during the time the Evanston Policies are in effect.

57.     The Underlying Lawsuit alleges that the HAGGARDS may suffer injury or damage in the future.

58.     Any future injury or damage occurring after the expiration of the 2017 Policy is not covered under the Evanston Policies.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that EVANSTON is not obligated to defend and/or indemnify 1841 MONROE for any claims of future injury or damages asserted in the Underlying Lawsuit.

## COUNT III

### DECLARATORY JUDGMENT THAT THE EVANSTON POLICIES EXCLUDE COVERAGE FOR DAMAGE TO PROPERTY OWNED BY 1841 MONROE

59.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

60.     The allegations of the Underlying Lawsuit fall within exclusion j(1) in the Evanston Policies, which excludes coverage for "property damage" to property owned by 1841 MONROE.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that EVANSTON is not obligated to defend and/or indemnify 1841 MONROE for damages sought in the Underlying Lawsuit because the alleged damages fall within the Evanston Policies' exclusion for "property damage" to property owned by 1841 MONROE.

**COUNT IV**

**DECLARATORY JUDGMENT THAT THE EVANSTON POLICIES EXCLUDE COVERAGE FOR PROPERTY DAMAGE TO PROPERTY ON WHICH 1841 MONROE OR ANY CONTRACTORS OR SUBCONTRACTORS WORKING ON 1841 MONROE'S BEHALF PERFORMED OPERATIONS AND/OR PROPERTY THAT MUST BE RESTORED, REPAIRED, OR REPLACED BECAUSE WORK PERFORMED BY OR ON BEHALF OF 1841 MONROE WAS INCORRECTLY PERFORMED ON IT**

61.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

62.     Exclusion j(5) in the Evanston Policies excludes coverage for "property damage" to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."

63.     Exclusion j(6) in the Evanston Policies excludes coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

64.     The allegations of the Underlying Lawsuit with respect to any damages to, and costs associated with the repair of, the party wall between the HAGGARDS' home and 1841

Monroe St, NW and/or the HAGGARDS' chimney fall within exclusions j(5) and j(6) in the Evanston Policies.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that EVANSTON is not obligated to defend and/or indemnify 1841 MONROE for damages sought in the Underlying Lawsuit because the alleged damages fall within exclusions j(5) and j(6) in the Evanston Policies.

### COUNT V

### DECLARATORY JUDGMENT THAT THE EVANSTON POLICIES EXCLUDE COVERAGE PURSUANT TO THE COMBINATION GENERAL ENDORSEMENT

65.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

66.     The Evanston Policies contain a Combination General Endorsement, which provides that the Evanston Policies do not apply to:

**Hazardous Or Toxic Materials**

"Bodily injury", "property damage", "personal and advertising injury" or any injury, loss, or damage, including consequential injury, loss or damage, arising out of, caused or contributed to by "hazardous or toxic materials":

(1)     Whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from "hazardous or toxic materials". This applies regardless of source, including but not limited to, from any goods, products or structures containing "hazardous or toxic materials", or the existence of "hazardous or toxic materials" in any form, in occupancy, construction, manufacture, sale, transportation, handling, storage, disposal, distribution or removal; and

(2)     Regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to, abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of "hazardous or toxic materials", or in any way respond to assess the effects of "hazardous or toxic materials".

Coverage does not apply to any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way, responding to, or assessing the effects of "hazardous or toxic materials" by any insured or by any other person or entity.

**\*\*\***

**Movement Of Land Or Earth**

"Bodily injury", "property damage", "personal and advertising injury" or any injury, loss, or damage, including consequential injury, loss or damage, arising out of, caused or contributed to by movement of land or earth regardless of whether it emanates from, is aggravated by, or is attributable to any operations performed by or on behalf of any insured whether the first manifestation occurs during the policy period or prior or subsequent thereto. Movement of land or earth includes instability, subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, rising, tilting, bulging, cracking, mud flow, mudslide, earthquake, shrinking or expansion of ground, slabs, footings, foundations, walls, roofs, floors, ceilings or any other real property or part thereof.

**Professional Liability**

Professional liability, errors, omissions, negligent acts, malpractice or acts of any type including rendering or failure to render any type of professional service, unless such coverage is specifically endorsed onto the policy.

67.     The Underlying Lawsuit alleges damages arising out of, caused, or contributed to by hazardous or toxic materials, which are excluded from coverage pursuant to the Hazardous or Toxic Materials exclusion found in the Combination General Endorsement

68.     The Underlying Lawsuit alleges damages arising out of, caused, or contributed to by excavation work on the Project, which are excluded from coverage pursuant to the Movement of Land Or Earth exclusion found in the Combination General Endorsement.

69.     The Underlying Lawsuit alleges acts of professional liability, errors, omissions, and/or acts by 1841 MONROE, which are excluded from coverage pursuant to the Professional Liability exclusion found in the Combination General Endorsement.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that EVANSTON is not obligated to defend and/or indemnify 1841 MONROE for the claims of "bodily injury" or "property damage" arising out of, caused, or contributed to by hazardous or toxic materials and/or excavation work on the Project, or for the claims of professional liability,

errors, omissions, and/or acts by 1841 MONROE, based upon the Combination General Endorsement contained in the Evanston Policies.

## COUNT VI

**DECLARATORY JUDGMENT THAT THE EVANSTON POLICIES
EXCLUDE COVERAGE PURSUANT TO THE LIMITATION –
CONTRACTOR OR SUBCONTRACTOR MANAGEMENT ENDORSEMENT**

70.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

71.     The Evanston Policies contain a Limitation – Contractor or Subcontractor Management Endorsement that provides, in pertinent part, that prior to the commencement of any work performed for or on behalf of the insured by a contractor or subcontractor, 1841 MONROE must require, secure and maintain a certificate of insurance that confirms that 1841 MONROE is named as an additional insured on the contractor or subcontractor's commercial general liability coverage with limits that are equal to or greater than the Evanston Policies.

72.     In the event that 1841 MONROE did not comply with the conditions in the Limitation – Contractor or Subcontractor Management Endorsement, the limits of the Evanston Policies are reduced to $50,000.00 per occurrence, including defense costs.

73.     Upon information and belief, 1841 MONROE did not comply with the conditions set forth in the Limitation – Contractor or Subcontractor Management Endorsement.

74.     Consequently, the Evanston Policies' limits are reduced to $50,000 for both the defense of 1841 MONROE and indemnity for any covered damages.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that (i) the Evanston Policies' limits for both the defense of 1841 MONROE and indemnity for any covered damages in the Underlying Lawsuit are reduced to $50,000.00, and (ii) that to the

extent that EVANSTON has any duty to defend and/or indemnify 1841 MONROE for the claims asserted in the Underlying Lawsuit, which EVANSTON denies, any such duty terminates once the Evanston Policies' limits of $50,000 are eroded based upon the Limitation – Contractor or Subcontractor Management Endorsement contained in the Evanston Policies.

## COUNT VII

### DECLARATORY JUDGMENT THAT THE 2017 POLICY EXCLUDES COVERAGE PURSUANT TO THE CONTINUOUS OR PROGRESSIVE INJURY OR DAMAGE ENDORSEMENT

75.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

76.     The 2017 Policy contains a Continuous or Progressive Injury or Damage Endorsement that provides, in pertinent part, that the policy does not apply to "bodily injury" or "property damage" that first occurred, first began to occur, or is alleged to have first occurred, prior to the inception of the 2017 Policy.

77.     The Underlying Lawsuit alleges that the HAGGARDS suffered and are continuing to suffer "bodily injury" and/or "property damage" that first occurred prior to the inception of the 2017 Policy on July 8, 2017.

78.     The allegations of the Underlying Lawsuit with respect to continuous and/or progressive injury or damage are excluded under the 2017 Policy pursuant to the Continuous or Progressive Injury or Damage Endorsement.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that EVANSTON is not obligated to defend and/or indemnify 1841 MONROE for damages sought in the Underlying Lawsuit because the alleged damages fall within 2017 Policy's

Continuous or Progressive Injury or Damage Endorsement's exclusion for "bodily injury" or "property damage" that first occurred or first began to occur prior to July 8, 2017.

## COUNT VIII

### DECLARATORY JUDGMENT THAT THE EVANSTON POLICIES EXCLUDE COVERAGE PURSUANT TO THE SPECIFIED UNDERGROUND HAZARDS ENDORSEMENT

79.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

80.     The Evanston Policies contain a Limited Exclusion – Specified Underground Hazards Endorsement that provides, in pertinent part, that the insurance does not apply to "bodily injury" or "property damage" in any way involving "your work" below the surface of the ground.

81.     The Underlying Lawsuit alleges damages arising out of or caused by excavation work on the Project, which are excluded from coverage pursuant to the Limited Exclusion – Specified Underground Hazards Endorsement.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that EVANSTON is not obligated to defend and/or indemnify 1841 MONROE for damages sought in the Underlying Lawsuit because the alleged damages fall within the Evanston Policies' exclusion for "property damage" to property owned by 1841 MONROE.

## COUNT IX

### DECLARATORY JUDGMENT THAT THE EVANSTON POLICIES EXCLUDE COVERAGE PURSUANT TO THE TOTAL POLLUTION EXCLUSION ENDORSEMENT

82.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

83.     The Evanston Policies contain a Total Pollution Exclusion Endorsement which provides, in pertinent part, that the insurance does not apply to "bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

84.     The Underlying Lawsuit alleges damages and/or injuries caused by the discharge, dispersal, seepage, migration, release or escape of asbestos, lead, and carbon monoxide, which are excluded from coverage pursuant to the Limited Exclusion – Specified Underground Hazards Endorsement.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that EVANSTON is not obligated to defend and/or indemnify 1841 MONROE for damages sought in the Underlying Lawsuit because the alleged damages fall within the Evanston Policies' exclusion for "bodily injury" or "property damage" caused by the discharge, dispersal, seepage, migration, release or escape of the "pollutants."

## COUNT X

**DECLARATORY JUDGMENT THAT THE EVANSTON POLICIES EXCLUDE COVERAGE FOR CLAIMS ASSERTED AGAINST WILLIAMS AND OKELO INDIVIDUALLY OR IN THEIR CAPACITY AS AGENTS OF DC HOME BUZZ**

85.     EVANSTON reincorporates by reference the allegations set forth in paragraph 1 through 50 above.

86.     The Evanston Policies provide that members of a limited liability company are insureds, but only with respect to the conduct of the business of 1841 MONROE.

87.     The Evanston Policies provide that managers of a limited liability company are insureds, but only with respect to their duties as managers of 1841 MONROE.

88.     The Underlying Lawsuit alleges that WILLIAMS and OKELO are owners and operators of 1841 MONROE as well as employees and/or agents of DC HOME BUZZ.

89.     The Underlying Lawsuit sues WILLIAMS and OKELO in their individual capacities and alleges that 1841 MONROE and DC HOME BUZZ are the alter egos of WILLIAMS and OKELO.

90.     Evanston has no duty to defend or indemnify WILLIAMS or OKELO with respect to claims asserted against them individually or in their capacity as employees and/or agents of DC HOME BUZZ.

WHEREFORE, EVANSTON seeks a judgment in its favor, declaring and adjudicating that EVANSTON is not obligated to defend and/or indemnify WILLIAMS or OKELO for any claims asserted against them individually or in their capacity as employees and/or agents of DC HOME BUZZ in the Underlying Lawsuit.

## **RELIEF SOUGHT**

For the reasons set forth above, none of the damages sought or claimed against 1841 MONROE in the Underlying Lawsuit are covered under the terms and conditions of the Evanston Policies and, as a consequence, EVANSTON seeks the following declarations:

a.  The damages alleged in the Underlying Lawsuit do not fall within the insuring agreement of the Evanston Policies because there was no "occurrence" as defined by the Evanston Policies;

b.  The Evanston Policies do not provide coverage for the future injury or damage occurring after July 8, 2018;

c.  The allegations of the Underlying Lawsuit fall within the Evanston Policies' exclusion j(1) for property damage to property owned by the insured;

d.  The allegations of the Underlying Lawsuit with respect to damages to the party wall and/or the HAGGARDS' chimney fall within exclusions j(5) and j(6) in the Evanston Policies;

e.  The allegations of the Underlying Lawsuit fall within the exclusions contained in the Evanston Policies' Combination General Endorsement;

f.  1841 MONROE's failure to comply with the conditions set forth in the Limitation – Contractor or Subcontractor Management Endorsement reduces the Evanston Policies' limits to $50,000.00 for both the defense of 1841 MONROE and indemnity for any covered damages in the Underlying Lawsuit;

g.  To the extent EVANSTON has any duty to defend and/or indemnify 1841 MONROE for the claims asserted in the Underlying Lawsuit, any such duty terminates once the Evanston Policies' limits of $50,000.00 are eroded based upon the Limitation – Contractor or Subcontractor Management Endorsement contained in the Evanston Policies;

h.  The allegations of the Underlying Lawsuit fall within the 2017 Policy's Continuous or Progressive Injury or Damage Endorsement's exclusion for "bodily injury" or "property damage" that first occurred or first began to occur prior to July 8, 2017;

i.  The allegations of the Underlying Lawsuit fall within the exclusions contained in the Evanston Policies' Specified Underground Hazards Endorsement;

j.  The allegations of the Underlying Lawsuit fall within the exclusions contained in the Evanston Policies' Total Pollution Exclusion Endorsement;

k.  EVANSTON is not obligated to defend or indemnify WILLIAMS or OKELO for any claims asserted against them individually or in their capacity as employees and/or agents of DC HOME BUZZ in the Underlying Lawsuit;

l.  EVANSTON is not obligated to defend 1841 MONROE in the Underlying Lawsuit;

m.  EVANSTON is not obligated to indemnify 1841 MONROE for damages sought in the Underlying Lawsuit;

n.  Any such other relief the Court deems just and proper.

WHEREFORE, EVANSTON INSURANCE COMPANY seeks entry of judgment in its favor, declaring and adjudicating that EVANSTON INSURANCE COMPANY has no duty to defend and no duty to indemnify 1841 MONROE STREET, LLC for any claims alleged in the Underlying Lawsuit.  Further, EVANSTON INSURANCE COMPANY demands judgment for its costs and such further relief as the Court may deem just and proper.

Dated:  July 16, 2018

Respectfully submitted,

*/s/ C. Britton Bonner, Esq.*

C. BRITTON BONNER, ESQ.
LEAD ATTORNEY
DC Bar No. 1027967
britton.bonner@arlaw.com

REBECCA C. APPELBAUM, ESQ.
Florida Bar No.: 0179043
rebecca.appelbaum@arlaw.com
jenny.schroeder@arlaw.com
*Pro Hac Vice Admission Forthcoming*

CHELSEA C. HARRISON, ESQ.
Florida Bar No.: 98536
chelsea.harrison@arlaw.com

lisa.stallard@arlaw.com
*Pro Hac Vice Admission Forthcoming*

ADAMS AND REESE LLP
20 F. Street NW, Suite 500
Washington, DC 20001
(202) 737-3234 (Telephone)
(202) 737-0264 (Facsimile)

*Attorneys for Plaintiff, Evanston Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

*/s/ C. Britton Bonner, Esq*
C. BRITTON BONNER, ESQ.
LEAD ATTORNEY
DC Bar No. 1027967